## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

AFFILIATED FM INSURANCE COMPANY
a/s/o American Music & Sound, LLC, and
AMERICAN MUSIC & SOUND, LLC,

                    Civil Action No. 1:17-cv-00336-JPO

       Plaintiffs,

v.

M/V MOL EXPERIENCE her engines, tackle,
etc., in rem and KUEHNE + NAGEL, INC.
d/b/a BLUE ANCHOR LINE, in personam,

       Defendants.

-and-

KUEHNE + NAGEL, INC. d/b/a BLUE
ANCHOR LINE, in personam

       Third-Party Plaintiffs.

v.

BNSF Railway Company and AZ/CFS
WEST, Inc.

       Third-Party Defendants.

-----------------------------------------------------------------X

## KUEHNE + NAGEL, INC.'S COMBINED RESPONSE AND MEMORANDUM IN OPPOSITION TO BNSF RAILWAY COMPANY'S MOTION TO DISMISS AMENDED THIRD-PARTY COMPLAINT [DE 49] AND AZ/CFS WEST, INC.'S MOTION TO DISMISS AMENDED THIRD-PARTY COMPLAINT [DE 50]

COMES NOW, Defendant/Third-Party Plaintiff, KUEHNE + NAGEL, INC., d/b/a BLUE

ANCHOR AMERICA LINE, hereinafter referred to as ("K+N"), by and through the undersigned

counsel, and files this its Combined Response and Memorandum in Opposition to BNSF Railway

Company's Motion to Dismiss Amended Third Party Complaint [DE 49] and AZ/CFS West, Inc.'s

Motion to Dismiss Amended Third Party Complaint [DE 50] (hereinafter "BNSF", "AZ West"

and/or "Third-Party Defendants"), and states as follows:

## TABLE OF CONTENTS

I.    Introduction and Background ................................................................................. 1

II.   Legal Analysis ...................................................................................................... 2

   A.   Movants' Efforts to Defeat the 14(c) Claim Mandate a Finding of Judicial Admission and Estoppel. .......................................................................................................... 2

   B.   The Governing Forum Selection Clause (Sky Reefer Provision) Encompasses All Disputes Pertaining to the Movement of the Plaintiff's Cargo. ................................. 6

   C.   The Court May Properly Exercise Jurisdiction Over the Third-Party Complaint ............ 13

   D.   The Iqbal and Twombly Standard of Pleading Has Been Met. ......................................... 19

   E.   Venue is Appropriate in the Instant Forum ..................................................................... 24

III.  Conclusion ........................................................................................................... 25

## I.    <u>Introduction and Background</u>

The instant action stems from a multi-modal international transportation of cargo contemplated to move audio equipment from Japan to Memphis, Tennessee by both ocean and rail. The cargo was damaged in transit due to a train derailment while in the possession custody and control of BNSF. [DE 46]. Plaintiff claims approximately $52,000.00 in damages. [DE 12]. According to the allegations of the Amended Complaint [DE 12], the shipper, Fostex Company, retained the services of Third-Party Plaintiff K+N to effectuate this transport and, in turn, acting on behalf of the shipper, K+N subcontracted a segment of the necessary logistics and transportation services for the movement of the cargo to Third-Party Defendants, AZ West and BNSF, who performed their services subject to the terms and conditions of the governing bill of lading.[1]

Despite the fact that the bill of lading mandates that any actions regarding disputes arising from the transport described in the bill of lading must be brought in the instant forum, both Third-Party Defendants cry foul and have submitted jurisdictional motions (as well as arguments claiming that the third-party complaint fails to state a cause of action) asserting that this Court has neither general nor specific jurisdiction over the Movants; and that venue is improper as well. For each of the reasons more fully set forth herein, the Court may exercise jurisdiction on the basis of the forum selection clause, specific jurisdiction, or potentially general jurisdiction.[2]

The bill of lading terms and conditions state in relevant part that, "For US Carriage, this sea waybill is governed by United States law and the United States Federal Court of the Southern District of New York has exclusive jurisdiction to hear all disputes hereunder." Neither AZ West nor BNSF dispute that they were aware of the bill of lading or its terms, or that they performed

---

[1] As more fully set forth below, Third-Party Defendant BNSF specifically admits in its moving papers [DE 49-1] that it was a Subcontractor as a rail operator used in the transportation described in the bill of lading; and AZ West, in its moving papers [DE 51, p. 7] specifically adopts and incorporates BNSF's position in this regard. Under the contract (the bill of lading), this makes such subcontractors parties to the bill of lading.
[2] Third-Party Plaintiff has alleged sufficient factual averments to establish prima facie general jurisdiction, and neither Third-Party Defendant has come forward with affidavits or evidence to contradict those assertions.

services as part of the transportation chain thereunder. They simply state that their names did not expressly appear on the document. It is well-settled that this a subcontracting party need not be specifically identified by name.

This forum selection and jurisdictional clause, also known in the industry as a Sky Reefer provision lays bare and itself defeats Movants' jurisdictional and venue arguments. However, AZ West and BNSF also both take the position that since the cargo itself did not move through New York, and that therefore both venue and jurisdiction are inappropriate in the instant forum. This rests on a misapprehension of governing law and interpretation of New York's long arm statute which specifically and expressly confers jurisdiction where Defendant derives substantial revenue from interstate or international commerce; coupled with the failure on the part of both AZ West and BNSF to come forward with any evidence disputing same.

Finally, Third-Party Defendants complain that the Third-Party Complaint lacks factual specificity under the *Iqbal* and *Twombly* standards, and that in any event the claims fail to state a cause of action upon which relief can be granted. Respectfully, and for the reasons more fully set forth below, the motions should be denied in their entirety.

## II.   <u>Legal Analysis</u>

### A.   **Movants' Efforts to Defeat the 14(c) Claim Mandate a Finding of Judicial Admission and Estoppel.**

Both AZ West (adopting BNSF's argument) and BNSF contend that the 14(c) claim must fail as a matter of law, at the motion to dismiss stage, because the non-recourse provision of the bill of lading contains a shipper warranty that it will not sue subcontractors; and that a direct shipper action by cargo interests against Third-Party Defendants would now be time-barred.

Nonrecourse clauses are typically to protect the carrier via indemnity language, not for the benefit of the underlying subcontractor. The nonrecourse provision at issue recognizes that a Court may allow a direct action, and in such event, a) mandates that the shipper indemnify K+N from

any resultant liability (for instance if K+N had contracted to hold Movants harmless from loss, shipper's suit could subject K+N to liability); and b) that if shipper does sue (implying that same is permissible), then Movants would be entitled to assert Himalaya clause/bill of lading defenses.

The thrust of BNSF's argument (and AZ West's adoption of said argument) is that any claim under Rule 14(c) is subject to the very same defenses which could be asserted directly against Plaintiff's claim; however, Movants' defenses to a shipper's direct action would be based only upon the contractual right to assert them as a subcontractor. In order to take advantage of such defenses, BNSF and AZ West have now correctly and accurately stipulated and admitted that they are subcontractors under the bill of lading, which makes them parties thereto by operation of fact and law.

COGSA applies "to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade." Id. s 1312. The term carriage of goods "covers the period from the time when the goods are loaded on to the time when they are discharged from the ship." Id. s 1301(e). COGSA applies to domestic shipments where a bill of lading, or a similar document of title that is evidence of a contract, contains an express statement that it shall be subject to the provisions of COGSA. Id. s 1312. Thus, COGSA may apply 1) by its own terms ("ex proprio vigore") or 2) by express incorporation in a contract ("ex contractu"). See *Maersk Line, Ltd. v. U.S.* 460 F.Supp.2d 678 (EDVA 206). In the instant case, it is undisputed that neither BNSF nor AZ West undertook actual ocean carrier services for carriage by sea; rather, they undertook their respective logistics services in the course and scope of the inland portion covered by the through bill of lading. The Second Circuit has defined a through bill of lading as a document "by which a carrier agrees to transport goods from origin to destination, even though different carriers (such as a railroad, trucker, or air carrier) may perform a portion of the contracted shipment." See *American Home Assur. Co. v. Hapag Lloyd Container LInie GmbH* 2004 WL 1616379 (SDNY 2004), citing *Hartford Fire Ins. Co. v. Orient Overseas Container Lines (UK),* 230 F.3d 549, 552 n. 2 (2d

Cir.2000) (citing *Mannesman Demag Corp. v. M/V Concert Express,* 225 F.3d 587, 588 n. 3 (5th Cir.2000)). It further bears noting that the Court in *American Home* is yet another instance in which personal jurisdiction was exercised over BNSF in the instant forum in an action involving a train derailment between Chicago and California for ocean transport between California and Singapore, with no apparent logistics services actually occurring in New York.

The bill of lading in the instant case has a clause paramount (a provision which **contractually** extends the terms and conditions of COGSA to a period where it would not otherwise apply; i.e. the inland portion after discharge from the ocean vessel. See *Royal & Sun Alliance, PLC v. Service Transfer, Inc.* 2012 WL 6028991 (SDNY)) which provides at 6.1(a)

> For US Carriage this sea waybill shall have effect subject to the provisions of COGSA and to the Pomerene Act regardless of whether said Act would apply of its own force. The provisions of COGSA are incorporated herein and save as otherwise provided herein shall apply the entire time the Goods are in the Carrier's custody, including before loading and after discharge as long as the Goods remain in the custody of the Carrier or its Sub-Contractor, including Goods carried on deck.

Because COGSA applies on a contractual basis only to the portion of the movement involving AZ West and BNSF, they may only assert a one-year time bar defense (or a defense based upon the non-recourse provision) on the basis of the contract (the bill of lading). In order to do this, Movants correctly recognize that they must be parties to that bill of lading. They are.

Typically, subcontractors who were retained by the carrier (in this case K+N)[3] seek to assert defenses under the bill of lading by virtue of invoking what is known in the industry as a Himalaya clause. A Himalaya Clause i**s** a contractual provision in a bill of lading that extends the bill's liability limitations to downstream parties contracted by the carrier to assist in the carriage of

---

[3] This includes sub-subcontractors who are not in direct privity with the carrier, but retained by subcontractors who are in direct privity with K+N. *See* part 1 definitions - bill of lading.

4

goods, _Kirby,_ 543 U.S. at 20 & n. 2, 125 S.Ct. 385. "A single Himalaya Clause can cover both sea and land carriers downstream." _Id._ at 29, 125 S.Ct. 385.

In this case, the bill of lading provides at paragraph 5.3 such a Himalaya provision, to wit:

> 5.3 Without prejudice to the other provisions in this Clause 5, every Sub-Contractor shall have the benefit of all provisions herein benefiting the Carrier including clause 21 hereof, the jurisdiction and law clause, as if this sea waybill (including Clause 21 hereof) were expressly for its benefit and in entering into this contract the Carrier, to the extent of these provisions, does so not only on his own behalf but also as agent or trustee for such Sub-Contractor and **_such Sub-Contractor shall to this extent be or be deemed to be parties to this contract. (EMPHASIS ADDED)._**

Both AZ West and BNSF have invoked this provision; admitted that they are subcontractors (and therefore parties to the agreement), and furthermore, come within the definition of subcontractors under the bill which:

> Includes but is not limited to owners, charterers and operators of Vessels (other than the Carrier), stevedores, terminal and/or groupage operators, road, rail and air transport operators, forwarding agents, liner agents, customs brokers, warehousemen, longshoremen, customs inspection stations, port authorities, pilots and any independent contractors, servants or agents employed by the Carrier in performance of the Carriage and any direct or indirect sub-contractors, servants or agents thereof, whether in direct contractual privity with the Carrier or not.

As more fully set forth below, because AZ West and BNSF have now judicially admitted (consistent with the factual record of this case) that they are parties to the bill of lading, and subcontracted under the bill of lading to provide services necessary to effectuate the transport thereunder; and because all disputes relating to the bill of lading are to be brought in the instant forum as the exclusive jurisdiction, Movants are judicially estopped from maintaining that they are not subject to jurisdiction in this forum; that they did not contract for services related to this forum; that this is an improper venue; or that there is a lack of privity; duty giving rise to tort; or a special relationship sufficient to support an indemnity obligation.

An "assertion of fact in a pleading is a judicial admission by which [a party] normally is bound throughout the course of the proceeding." *Bellefonte Reinsurance Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985). A judicial admission is "not considered to be evidence, 'but rather [has] the effect of withdrawing a fact from contention.'" TR 39th St. *Land Corp. v. Salsa Distrib. USA, LLC*, No. 11 Civ. 7193, 2015 WL 1499173, at *5 (S.D.N.Y. Mar. 25, 2015) (quoting Maurizio v. Goldsmith, 84 F.Supp.2d 455, 464 (S.D.N.Y. 2000)). *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006) ("Facts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout th[e] litigation.").

As noted by the Court in *Vincent v. Money Store* 2014 WL 1087928 (SDNY), a court can appropriately treat statements in briefs as binding judicial admissions of fact. Id @ 2, citing *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir.1994). *See also*, In re Ridgway 2005 WL 1084872 (D Conn.).

By admitting that they are parties to the bill of lading and that the services they performed as alleged in the third-party complaint were part and parcel of effectuation of transport described in such bill of lading, Movants have withdrawn this fact from dispute. This has far-reaching effect in the instant case, serving to defeat each of the arguments as posited by AZ West and BNSF (those arguments are defeated independent of such a finding as well).

**B. The Governing Forum Selection Clause (Sky Reefer Provision) Encompasses All Disputes Pertaining to the Movement of the Plaintiff's Cargo.**

Sky Reefer provisions, or forum selection clauses as found on ocean bills of lading, take their name from the U.S. Supreme Court addressing their enforceability. *Vimar Seguros v. Reaseguros*, *S.A. v. M/V Sky Reefer*, 515 U.S. 528, 539 (1995). These provisions are routinely enforced, and in the instant case, the language in the subject bill of lading expressly applies the provision to subcontractors (both Movants have admitted in their moving papers that they are

subcontractors under the bill of lading), and contains mandatory and exclusive language requiring that any dispute pertaining to the transport under the bill of lading be resolved in the instant Court.

It should be noted that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972); accord *New Moon Shipping Co., Ltd. v. Man B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir.1997). In order to overcome this presumption of enforceability, a party which seeks to bring a suit in a forum other than the one designated by the forum selection clause must prove that: 1) the forum selection clause is invalid for fraud or overreaching; 2) the forum selection clause will deprive plaintiff of its day in court due to grave inconvenience or unfairness of the selected forum; 3) the fundamental unfairness of the chosen law will deprive plaintiff of a remedy; or 4) enforcement would contravene a strong public policy of the forum in which the action was brought. *See* M/S Bremen, 407 U.S. at 15–17.

A party claiming that the forum selection clause is unreasonable bears a "heavy burden" to prove that the clause should not be enforced. *See* New Moon, 121 F.3d at 32. Here, neither AZ West nor BNSF have come forward with a declaration that they were unaware of the existence of the terms and conditions or that they would be bound by same; nor has either Movant come forward with evidence, by way of declaration or otherwise, that the services performed were not so closely related to the dispute that it was foreseeable that they would be so bound. To the contrary, both Movants have availed themselves of application of the very same terms and conditions in an attempt to defeat K+N's 14(c) claim. Further, neither Movant could dispute that had a party brought legal action against them in another forum, they would have been unable to assert the forum selection clause defensively.

In this case, BNSF has admitted that it is a Sub-Contracting rail operator used in the transportation under the bill of lading. *See* [DE 49-1] p. 11. Similarly, AZ West, by adopting

BNSF's argument has also acquiesced to the position that it was a subcontractor performing services under the bill of lading. *See* [DE 51] p. 7.

By participation as a subcontractor under the bill of lading, both AZ West and BNSF have either consented to venue and personal jurisdiction in the instant forum or waived same. See *Sunday Riley Modern Dkin Care LLC v. Maesa* 2013 WL 231860 (SD TX) @ 7.

Personal jurisdiction can be waived by an enforceable forum selection clause in which the parties consent to personal jurisdiction in a specified forum. *Burger King*, 471 U.S. at 473 n. 14. A party who signs a contract with a forum selection clause has either consented to personal jurisdiction or waived the requirements for personal jurisdiction in a selected forum where the clause was obtained through freely negotiated agreements and is not unreasonable or unjust. *Burger King*, 471 U.S. at 473, 472 n. 14. See also *Holland America v. Wartsila North America, Inc*. 2004 WL 3661070 (WD Wash) (venue and personal jurisdiction arguments need not be addressed after conclusion that forum selection clause is valid and enforceable against movants).

It should be noted that these provisions are presumptively valid, and neither Defendant has come forward with any evidence (or any affidavit at all) claiming that they were unaware they would be bound by the bill of lading, or that they were unaware of these terms, or that the clause results from fraud or overreaching.

In this case, both AZ West and BNSF may be deemed by fact, operation of law, and judicial admission to be parties to the bill of lading and, thus, bound to the terms and conditions therein, including the mandatory forum selection provision. In addition to the judicial admissions outlined above, the definitions of the bill of lading also serve to encompass both AZ West and BNSF (consistent with such admissions). The definitional sections, and those pertaining to subcontracting, specifically make subcontractors both parties to the bill of lading, and parties that are subject to the Sky Reefer provision, to wit:

"Merchant" includes the Shipper and the Persons named in this sea waybill as consignee and notify party, the receiver of the Goods and the Person entitled to receive the Goods on notification by the Merchant, any Person owning or lawfully entitled to the possession of the Goods or this sea waybill, the Person on whose account the Goods are handed to the Carrier, any Person acting on behalf of any of the above-mentioned Persons, including agents, servants and Sub-Contractors.

"**Sub-Contractor" includes _but is not limited to_** owners, charterers and operators of Vessels (other than the Carrier), stevedores, terminal and/or groupage operators, road, **_rail_** and air transport operators, forwarding agents, liner agents, customs brokers, warehousemen, longshoremen, **_customs inspection stations_**, port authorities, pilots **_and any independent contractors, servants or agents employed by the Carrier_** in performance of the Carriage and any direct or **_indirect sub-contractors_**, servants or agents thereof, **_whether in direct contractual privity with the Carrier or not_**.

Without prejudice to the other provisions in this Clause 5, every Sub-Contractor shall have the benefit of all provisions herein benefiting the Carrier including clause 21 hereof, the jurisdiction and law clause, as if this sea waybill (including Clause 21 hereof) were expressly for its benefit and in entering into this contract the Carrier, to the extent of these provisions, does so not only on his own behalf but also as agent or trustee for such Sub-Contractor **_and such Sub-Contractor shall to this extent be or be deemed to be parties to this contract._**

21. JURISDICTION AND LAW

21.1 For US Carriage, this sea waybill is governed by United States law and the United States Federal Court of the Southern District of New York has exclusive jurisdiction to hear all disputes hereunder.

It is well settled that agents may bind third parties to the enforceable terms under the bill of lading, including a forum selection clause. See *AP Moller-Maersk A/S v. Ocean Express Miami*, 550 F.Supp.2d 454 (SDNY 2008)

For purposes of the inland segment of transport, K+N was authorized under paragraphs 5.1 and 6.1(b) of the bill of lading to act as an agent for the retention of third-parties paragraph. Certainly, had Plaintiff (or Third-Party Plaintiff) commenced action against Movant in their principal place of business or the forum where the loss occurred, the Court would now be faced

with a motion to dismiss on the basis of the Sky Reefer provision with Movant claiming entitlement under the Himalaya[4] provisions as a subcontractor under the bill of lading.

The rationale for enforcement of sky reefer provisions in all actions stemming from transport covered by the bill of lading is self-evident. See Above from *CBJ, Inc. v. M/V Hanjin Hong Kong* 2000 WL 33258660 (D NJ).

> Given the language of the Himalaya Clause, it was surely reasonable for the parties to expect that Consolidated Rail would benefit from the forum selection clause to the same extent as the carrier, Cho Yang. See *Mikinberg v. Baltic Steamship Co.*, 988 F.2d 327, 332 (2d Cir.1993); Street, Sound Around, 30 F.Supp.2d at 663. Indeed, it would be grossly inefficient result for an action against a carrier to be brought in one jurisdiction and another action, arising out of the very same shipment, to be brought against the carrier's agent in an entirely different jurisdiction. Reasonableness requires the conclusion that the parties did not envision such a result when they entered into the bill of lading.

Furthermore, courts have enforced Sky Reefer provisions on crossclaims by NVOCCs against agents or subcontractors who, although not specifically identified by name, would come within the Himalaya clause, which extends benefits for the forum selection clause. See *Tokio Marine and Fire Ins. Co., Ltd v. Cosco*, 2004 WL 1950387 (CD CA).

Both AZ West and BNSF claim that because they are not signatories to the bill of lading, they should not be bound by the terms and conditions, including the forum selection clause. It is axiomatic, however, that Sky Reefer provisions may bind non-parties or non-signatories to the bill of lading. See *American S.S. Owners Mut. Protection and Indem. Ass's, Inc. v. American Boat Co.*, LLC 2012 WL 527209 (SDNY).

For example, in *American Bureau of Shipping v. Tencara Shipyard S.P.A.*, the Second Circuit held that the owners of a yacht were subject to an arbitration clause which appeared in an agreement between the vessel and a third party, because "the Owners received several direct

---

[4] A Himalaya clause is a provision extending application of contractual terms and conditions to a third-party that is not a signatory to the document. Here, the bill of lading contains such a provision at paragraph 5.3.

benefits" from the contractual relationship. 1999 AMC 1858, 1862, 170 F.3d 349, 353 (2 Cir. 1999). The Owners' enjoyment of such benefits estopped them from arguing that the arbitration clause did not apply to them. See *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2 Cir. 2009) ("the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause"); *MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2 Cir. 2001) ("where a company knowingly accepted the benefits of an agreement with an arbitration clause, even without signing the agreement, that company may be bound by the arbitration clause")(internal citation and quotation marks omitted);see also *Holland *1511 Am. Line Inc. v. Wartsila N. Am., Inc.*, 2007 AMC 1229, 1232-33, 485 F.3d 450, 456 (9 Cir. 2007)(forum selection clause may be applied to a non-signatory because the contract in which the clause appeared governed transactions involving non-signatories); *Marano Enters., of Kan. v. Z-Teca Restaurants, L.P.*, 254 F.3d 753, 757-58 (8 Cir. 2001) (non-signatories bound by forum selection clause because they brought suit under the contract containing the clause, and because they were "closely related" to the dispute arising out of the contract).

Here, *American Boat* similarly seeks to benefit from the contract, by claiming entitlement to payment of its legal defense costs and, potentially, its legal obligations to Perez-Mossetty, from The Club, based on its having been listed on the Certificate (which itself incorporates the Rules) as an additional assured. Under the direct benefits theory of estoppel, American Boat is, therefore, estopped from arguing that it is a non-Member and hence not subject to the forum selection clause.

Key to the *American Boat* analysis was the fact (as here) that where the 'non-party' to the bill of lading claimed a benefit under the bill of lading (both AZ West and BNSF claim entitlement to the non-recourse provision asserting that the 14(c) claim must fail since Plaintiff warranted it would not sue those entities), that said 'non-party' would be estopped from arguing that it was not

subject to the forum selection clause. See also *Hellenic Investment Fund v. Det Norske Veritas*, 464 F.3d 514 (5th Cir. 2006).

As noted by the Court in *Allianz Insurance Co. of Canada v. Cho Yang Shipping Co., Ltd.* 131 f.supp.2d 787 (ED VA), non-parties may be bound to a forum selection clause, if the non-party is so "'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound.'" Id @ 791, citing *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir.1993)(quoting *Manetti–Farrow, Inc. v. Gucci Am., Inc*., 858 F.2d 509, 514 n. 5 (9th Cir.1988)); *International Private Satellite Partners, L.P. v. Lucky Cat Ltd*., 975 F.Supp. 483, 485–86 (W.D.N.Y.1997).

The Court in Allianz went on, "Therefore, when non-parties' alleged conduct is so closely related to the contractual relationship, both parties and non-parties should benefit from and be subject to a forum selection clause contained in the contract." Id., citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd*., 709 F.2d 190, 202–03 (3d Cir.), cert. denied, *Coastal Steel Corp. v. Wheelabrator–Frye, Inc*., 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983); see also *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir.1998), cert. denied, 525 U.S. 1093, 119 S.Ct. 851, 142 L.Ed.2d 704 (1999); *Manetti–Farrow*, 858 F.2d at 514, n. 5; *Crescent Corp. v. Proctor & Gamble Corp*., 627 F.Supp. 745, 748 (N.D.Ill.1986).

Numerous other courts have enforced forum selection clauses in bills of lading against parties that neither signed nor negotiate the bill of lading. See *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995)(enforcing forum selection clause against plaintiff subrogee where cargo owner was not a party to the bill of lading, but it had chartered the ship for carrier to transport the cargo); *Pasztory v. Croatia Line*, 918 F.Supp. 961 (E.D.Va.1996); *Dukane Fabrics Int'l Inc. v. M.V. "Hreljin"*, 600 F.Supp. 202, 203 (S.D.N.Y.1985); *Paterson, Zochonis (U.K.) Ltd. v. Compania United Arrows, S.A*., 493 F.Supp.

626, 629–30 (S.D.N.Y.1980). As noted by the Court in *BMW of North America LLC v. M/V Courage* 254 F.Supp.3d 591, 597-598 (SDNY 2017).

> Put another way, "[c]ontract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." *Id.* at 724–25. With respect to the claims against GovLog brought by the other parties, the law is clear that "a broad forum selection clause governing 'all' claims arising under [a] **bill of lading**"—like the forum selection clause here— "extends to non-signatories connected to the carriage even where those claims arise outside the four corners of the contract itself (i.e., tort or bailment liability)." *AIG Mexico Seguros Interamericana, S.A. de C.V. v. M/V ZAPOTECA*, 844 F.Supp.2d 440, 442 (S.D.N.Y. 2012); see also *Thyssen Inc. v. M/V Markos N*, No. 97-CV-6181, 1999 WL 619634, at *4 (S.D.N.Y. Aug. 16, 1999) (Mukasey, J.) ("[C]ourts have held consistently that a 'broad' arbitration clause governing 'all disputes' arising under the charter covers even a dispute involving a nonsignatory."). Significantly, however, "[i]n order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Nanopierce Techs., Inc. v. Southbridge Capital Mgmt.,* No. 02-CV-0767 (LBS), 2003 WL 22882137, at *5 (S.D.N.Y. Dec. 4, 2003). "A non-party is closely related to a dispute if its interests are completely derivative of and directly related to, if not predicated upon the signatory party's interests or conduct." *Weingard v. Telepathy, Inc.*, No. 05-CV-2024, 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005) (Mukasey, J.) (internal quotation marks omitted).

In the instant case, both parties were parties to the bill of lading (and have admitted same), and furthermore provided services that clearly meet the 'closely related' test.

At worst, the question becomes one of foreseeability; whether AZ West and BNSF have reason to foresee that they would be bound by the bill of lading. While neither Movant has come forward with any evidence on this point creating any fact issue for resolution, at minimum, it would be premature to grant a motion to dismiss on this basis.

## C. The Court May Properly Exercise Jurisdiction Over the Third-Party Complaint.

While K+N asserts that the resolution of the issue of jurisdiction and venue may be dealt with on the basis of application of the Sky Reefer provision to both Movants, these arguments are

addressed in an abundance of caution. In cases (as here) in which discovery has not yet been conducted, in order to satisfy a Plaintiff's initial burden, K+N need only make a prima facie showing through pleadings (in the absence of any contravening affidavits by Defendant) which must be resolved in favor of K+N. See *Executive Telecard, Ltd v. Engelman* (1996 WL 191967 (SDNY 1996).

In the instant case, K+N has made sufficient factual averments in the Complaint, none of which have been opposed by Movant by way of affidavit, to satisfy K+N's initial prima facie burden. It is axiomatic that in the absence of discovery and an evidentiary hearing, a Plaintiff's allegations as set forth in the Complaint are ordinarily accepted as true at the pleadings stage. It is then incumbent upon a Defendant opposing a conferral of jurisdiction by way of motion to dismiss to come forward and rebut those unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction, and only if the Plaintiff does not counter that evidence may the allegation be deemed refuted. See *Gomes v. ANGOP, Angola Press Agency* 2012 WL 3637453 (EDNY), citing *Merck & Co., Inc. v. Mediplan Health Consulting*, Inc., 425 F.Supp.2d 402, 420 (S.D.N.Y.2006) (quoting *Schenker v. Assicurazioni Genereali S.p.A., Consol.*, 2002 WL 1560788, at *3 (S.D.N.Y. July 15, 2002)).

Here, Movants have come forward with nothing. AZ West, where it does not simply parrot BNSF's motion, essentially makes two arguments. First, it contends that the Complaint failed to set forth prima facie facts sufficient to confer general jurisdiction, ignoring that Third-Party Plaintiff has pled both that AZ West states on its website that it offers "coast to coast" logistical services; and that AZ West operates as an intermodal or connecting common carrier for hire, freight forwarder, or other transportation intermediary and logistics provider on international and interstate shipments that are part of continuous transport from routes outside of its traditional lanes and, as such, is involved in the transportation chain and stream of commerce across state lines to or from myriad ports including but not limited to the instant forum. Such services involve the

14

derivation of substantial revenue from its ties to transportation of goods moving through the instant forum as part of interstate or international commerce; and these services and derivation of revenue are continuous and systematic such that AZ West should reasonably anticipate being hauled into Court in the instant forum. This, coupled with the averments concerning AZ West's knowledge of the bill of lading and its terms and conditions, satisfies due process requirements such that traditional notions of fair play would not be offended were this Court to confer general jurisdiction over AZ West.

AZ West has done nothing to dispute the facts; has offered no declaration setting forth the percentages of its revenue that stem from international multi-modal logistics; and accordingly, AZ West has failed to rebut the prima facie allegations of general jurisdiction.

Next, AZ West contends that specific jurisdiction cannot lie with this Court in the absence of express allegations that AZ West transacted business in New York or that the specific claims alleged against AZ West arose from transacting business in New York. This narrow view ignores not only the Long Arm Statute and governing case authority, but the very case relied upon by AZ West in its moving papers. AZ West relies upon *Fantis Foods v. Standard Importing*, 49 N.Y.2d 317, 325 (1980), seemingly for the proposition that if neither an injury occurs in the forum state, nor is it foreseeable that suit would be commenced in the forum state for recovery of damages stemming from wrongful conduct outside of the forum state, then dismissal is appropriate. However, K+N has satisfied each of these elements.

K+N has asserted that an injury did occur in the forum state. (*See* DE 46 paragraph 15). See also, *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir.2002) (A corporation may accordingly sustain economic injuries in both its state of incorporation and principal place of business when those states differ). (*See also* additional argument at length below).

Furthermore, K+N alleged (at DE 46 paragraph 12) that the instant suit and its forum was foreseeable, asserting that "Third-Party Defendant AZ West undertook the performance of these

services pursuant to and with knowledge of the governing Sea Waybill which contains a mandatory and exclusive forum selection clause, to wit: 21.1. For US Carriage, this sea waybill is governed by United States law, and the United States Federal Court of the Southern District of New York has exclusive jurisdiction to hear all disputes hereunder." Thus, the *Fantis* case, far from mandating a dismissal, actually underscores how jurisdiction is proper.

BNSF makes similar arguments, each of which are equally unsupported or based upon a misapprehension or narrow interpretation of the law.

As to specific jurisdiction, BNSF, like AZ West, operates from a mistaken premise; that the injury to the Plaintiff must be based upon the principal place of business of the Plaintiff, not the place of incorporation. To the contrary, under New York law, the injury may be the place of business, the place of incorporation, or both. See *Cantor Fitzgerald Inc. v. Lutnick*, supra. "If the claimed injury is an economic one, the cause of action typically accrues 'where the plaintiff resides and sustains the economic impact of the loss.'" Id. For a business organization, "one looks to its State of incorporation or its principal place of business." *Global Fin. Corp. v. Triarc Corp*., 93 N.Y.2d 525, 693 N.Y.S.2d 479, 715 N.E.2d 482, 485 (1999).

In cases involving purely economic loss, "the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss," which would typically be a corporation's place of incorporation or principal place of business. (*Portfolio Recovery Assocs., LLC v. King*, 14 NY3d 410, 416 [2010], rearg. denied 15 NY3d 833.)

See also, *Vincent v. Money Store,* 915 F. Supp. 2d 553, 568 (S.D.N.Y. 2013) (place of injury is "where the plaintiff resides and sustains the economic impact of the loss, rather than where the defendant committed the wrongful acts" (internal citations omitted)). "Foreign corporations reside either in their principal place of business or their place of incorporation." *Deutsche Zentral-Genossenchaftsbank,* 2016 WL 6667601, at *5 (citing *Woori Bank v. Merrill Lynch,* 923 F. Supp. 2d 491, 494-95 (S.D.N.Y. 2013)); *cf. Daimler AG v. Bauman,* _U.S. _, 134

16

S. Ct. 746, 761 (2014) (stating that a corporation is essentially "at home" where it is incorporated or has its principal place of business). See also *Dandong Old North-East Agriculture & Animal Husbandry Co., LTd. v. Hu* 2017 WL 3328239 (SDNY), citing *City of Almaty*, 226 F. Supp. 3d at 275. The court held that even though the mayor and his co-conspirators used the funds in the United States, the plaintiff city did not suffer a domestic injury. Id. at 284. In other words, because the plaintiff suffered economic harm to its business, the place of injury was "the state of plaintiff's residence, and foreign corporations are recognized to reside either in their principal place of business or their place of incorporation." Id. at 282 (quoting *Deutsche Zentral-Genossenschaftbanks AG v. HSBC N. Am. Holdings, Inc*., No. 12 Civ. 4025 (AT), 2013 WL 6667601, at *5 (S.D.N.Y. Dec. 17, 2013) (internal quotation marks and citation omitted)). "When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss" (id. at 529, 693 N.Y.S.2d 479, 715 N.E.2d 482). In the case of a corporate plaintiff, that may be the state of incorporation or its principal place of business (id. at 529–30, 693 N.Y.S.2d 479, 715 N.E.2d 482; see also *Kat House Prods., LLC v. Paul, Hastings, Janofsky & Walker, LLP*, 71 A.D.3d 580, 580–581, 897 N.Y.S.2d 90 [2010]; **31 *Brinckerhoff v. JAC Holding Corp*., 263 A.D.2d 352, 353, 692 N.Y.S.2d 381 [1999]).

Again, while some Courts have held that the mere suffering of economic damages in New York based upon the Plaintiff's domicile or place of incorporation will be insufficient to warrant a finding of specific jurisdiction, this is not the only allegation upon which Plaintiff's averments of jurisdiction rest. To the contrary, that the damages have and will continue to accrue in the instant forum is self-evident. As a result of the instant actions and inactions on the part of BNSF and AZ West, Plaintiff has been damaged, and in turn has brought suit in the only place it could against K+N, the instant forum. Thus, K+N has and will continue to incur recoverable attorney's fees in this forum, and any judgment rendered against K+N will be rendered in the instant forum. This

was both foreseeable to AZ West and BNSF, and expressly stated in the very terms and conditions upon which they rely and agreed to be bound.

In the instant case, K+N has alleged a domestic injury. Neither AZ West nor BNSF have factually disputed this; rather they have relied erroneously on case authority which incorrectly precludes utilization of the place of incorporation as the appropriate locus or situs of economic injury for a corporation. It also ignores that the injury is ongoing, and that the situs of this continuing economic injury is the location of the instant underlying legal action; a consequence which was not only foreseeable, but also a condition under which both Movants agreed in their undertakings relating to this case. In other words, if AZ West and BNSF wished to contract with K+N to move Plaintiff's cargo, they were on notice and agreed to the fact that if the cargo were lost or damaged, K+N would be sued in New York; and further, Movants also agreed to be so bound.

Furthermore, and most damning to Movants' position (aside from the Sky Reefer provision), is a total failure to rebut any of the jurisdictional allegations. Movants have offered no facts to contradict these prima facie averments, and their motions must accordingly be denied.

With the conferral of specific jurisdiction, the question of general jurisdiction is somewhat moot; however, BNSF's sole basis to defeat a finding of general jurisdiction improperly relies upon *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1554, 198 L. Ed. 2d 36 (2017). Movant BNSF asks this Court to summarily dismiss the case on the basis of a lack of general jurisdiction because the Court in Tyrrell held, based upon a very specific factual record missing in the instant case, that the maintenance of 6% of its total track mileage of 32,500, the employment of some 2,100 workers there (less than 5% of its total work force of 43,000), and the generation of less than 10% of its total revenue in the State, as well as the maintenance of only one of its 24 automotive facilities in Montana (4%) would be insufficient to confer general jurisdiction.

Obviously, in that case, BNSF went to great lengths to establish from an evidentiary standpoint the contacts which it did or did not have in Montana as distinguished from the United States as a whole. BNSF has provided no such information as to the number of transactions that are based upon the provision of multi-modal services in international transport, or the percentage of revenue from same derived from contacts with companies incorporated in New York or operating under contracts that have New York forum selection clauses. As such, its motion is defective and must be denied.

In the absence of discovery or an evidentiary hearing, a plaintiff seeking to defeat a motion to dismiss for absence of personal jurisdiction or for improper venue need only make a prima facie showing that jurisdiction exists and venue is proper; such a showing entails making legally sufficient allegations, including an averment of facts that, if credited, would suffice to establish that jurisdiction exists and venue is proper. Fed. R. Civ. P. 12(b)(2), 12(b)(3). See *BMW of North America LLC v. M/V Courage* 254 F.Supp.3d 591 (SDNY 2017). Here, neither discovery nor an evidentiary hearing has been conducted. K+N has alleged that it suffered economic loss in the instant forum and that it continues to suffer injury in the instant forum. There is a forum selection clause in the governing bill of lading to which Movant's BNSF and AZ West have both admitted they are subcontractors to, claiming right and entitlement to defenses thereunder regarding their potential liability for the subject cargo loss.

Since all facts must be viewed in light most favorable to the non-moving party, and since Defendants have proffered no affidavits, it is respectfully submitted that both Motions be denied.

### D.  The Iqbal and Twombly Standard of Pleading Has Been Met.

Though technically Federal Courts in name remain subject to a notice pleading standard, it is well-accepted that the Supreme Court, and the case authority interpreting *Iqbal* and *Twombly*, have, through judge-made law, made compliance therewith a somewhat moving target and an

amorphous standard. That being said, it remains the case that even in the wake of *Iqbal* and *Twombly*, a motion to dismiss under 12(b)(6) be granted only if the pleading is violative of Rule 8(a) Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 8(a) requires that a complaint "contain ... a short and plain statement of the claim showing that the pleader is entitled to relief; and ... a demand for the relief sought." *Fed. R. Civ.* P. 8(a)(2)-(3). In order to withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A party must plead with sufficient factual detail to "'nudge [ ] [his or her] claims ... across the line from conceivable to plausible.'" *Iqbal,* 129 S.Ct. at 1950-51 (quoting *Twombly,* 550 U.S. at 570)). While stating a claim does not require the recitation of detailed factual allegations, it does require facts sufficient to state a claim for relief that is *prima facie* plausible. *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 555).

The Court must accept the allegations in a well-pleaded complaint as true, *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and draw all inferences in favor of the non-moving party. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1973); *see also Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 154 (2d Cir.2006); *King v. Am. Airlines, Inc.,* 284 F.3d 352, 356 (2d Cir.2002). A complaint should be dismissed on a Rule 12(b)(6) motion only where the plaintiff has failed to provide some basis for the allegations that support the elements of his or her claim. See *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Thus, in order to defeat a 12(b)(6) motion, a pleader must adhere to the following:

1) Plead with sufficient factual detail to simply nudge across the line from conceivable to plausible;

2)  Need not provide recitation of detailed factual allegations;

In fact, as set forth in *Scnitter v. City of Rochester* 931 F.Supp.2d 469 (WDNY 2013), New York District Courts and the Second Circuit have interpreted the U.S. Supreme Court standard to apprise Defendants in a manner sufficient to frame a response. K+N has satisfied this requirement.

> I recognize that a plaintiff need not plead evidence to state a facially valid claim, but there must still be enough facts alleged to apprise the defendants of what it is they are alleged to have done, so that they can frame a meaningful response. As the Second Circuit has put it, "notice pleading supported by facially plausible factual allegations is all that is required-nothing more, nothing less." In re Morgan Stanley Information Fund Securities Litigation, 592 F.3d 347, 358 (2d Cir.2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

It has been held time and again that, "A complaint need not contain detailed factual allegations, but it must contain more than mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007))."

Here, the allegations against each of the Defendants is quite specific, and Movants' motions should be denied in their entirety.

K+N has sufficiently alleged the existence of contractual undertakings, common law duty obligations, and a special relationship giving rise to common law indemnity obligations on the part of both Third-Party Defendants, and specifically identified how those contractual undertakings and duties were breached.

BNSF makes a weak, privity based argument, claiming that since AZ West formally or directly retained the services of BNSF, K+N can have no claim. This ignores the fact that K+N has properly and specifically alleged that these services ultimately stemmed from K+N's grant under the bill of lading to make arrangements on behalf of Plaintiff to effectuate the inland

21

transport. In other words, and as more fully set forth above, the bill of lading authorized K+N to subcontract all or part of the transportation segment. In this regard, K+N through AZ West exercised this authority retaining BNSF to effectuate the inland rail segment. BNSF (and AZ West) have admitted that they were subcontractors under the bill of lading.

K+N has alleged a contract, a breach of the contract by: a) failing to deliver; b) failing to take precautions to avoid the derailment; and c) that damages were sustained. The plausibility standard has clearly been met since it is alleged that there was a flood which caused the derailment and that there were precautions which BNSF could have taken to prevent such derailment (clearly plausible).[5]

In the case of AZ West, K+N has specifically stated at paragraph 25 of the Third-Party Complaint that said Third-Party Defendant undertook bailee and common carrier and/or vicarious responsibility for the safeguarding of the subject cargo, including the exercise of due care in selecting and supervising any subcontractors. The cargo was tendered in good order and condition; however, AZ West failed to ensure the delivery of the cargo in good order and condition resulting in the damages complained of in the action in main. Instead, the train on which the cargo was carrying derailed due to the failure of AZ West to properly monitor weather conditions or implement appropriate remedial or mitigation actions by selecting alternate routes or offloading cargo prior to the incident; or communicating with the principals to the shipping transaction. Said actions and inactions of AZ West proximately resulted in the damages complained of in the action in main.

It is alleged that both Third-Party Defendants undertook carrier and/or bailment obligations; federal common law clearly recognizes both undertakings as giving rise to a special

---

[5] K+N alleged that In or about December 27, 2015, flooding along Shoal Creek in Newton County caused the derailment of a Burling Northern train near Neosho. The subject cargo was on board said train; and that instead the train on which the cargo was carrying derailed due to the actions and inactions of BNSF in failing to account for conditions known and avoidable and failing to take appropriate remedial or mitigation actions to avoid the derailment. [DE 46] Paragraph 24.

relationship necessary to sustain a duty and an indemnity claim. See *Powhatan Steamship Co. v. Appomatox R.R.*, 65 U.S. 247 (1860). However, all *Powhatan* states is that a carrier issuing a through bill of lading has a right to indemnity against a subcontracted connecting carrier over whose line the loss or damage occurred. *Id*. at 254. Therein, the Court held that the subcontracting logistics providers were deemed to be agents of the initial carrier, and thus the ocean carrier who had primary responsibility to the cargo interest for the damage or loss to the shipment had a right to indemnity from the subsequent service providers who were in fact responsible for the subject loss. *Id*. Neither AZ West nor BNSF have come forward with case authority to the contrary.[6]

Recently, the Court in *GIC Services, LLC v. Freightplus* 866 F.3d 649 (5th Ci. 2017) has once again recognized that downstream logistics providers do sit in a special relationship to the upstream carrier.

> Once a prominent feature of maritime law, maritime tort indemnification is now available only in limited situations. *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 833 (5th Cir. 1992). One of these situations arises from a "special relationship" between two entities. *Cities Serv. Co. v. Lee–Vac, Ltd.*, 761 F.2d 238, 240 (5th Cir. 1985) (citing *Fed. Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969)); *see also LCI Shipholdings, Inc. v. Muller Weingarten AG*, 153 Fed.Appx. 929, 931 (5th Cir. 2005). Under this theory, an entity will owe indemnity when its negligence is the cause of a loss to its counterpart.
>
> The parties agree with the district court that a "special relationship" exists between a "non-vessel operating common carrier" (NVOCC) and a "vessel-operating common carrier" (VOCC). They disagree, however, with the district court's conclusion that: (1) Freightplus was operating as an NVOCC; and (2) IMC was negligent and its negligence caused Freightplus's injury.
>
> While we are not aware of a decision of ours recognizing maritime tort liability based on the relationship between a NVOCC and a VOCC, two of our sister circuits appear to have done so. *See SPM Corp. v. M/V Ming Moon*, 22 F.3d 523, 526–27 (3d Cir. 1994); *Ins. Co. of N. Am. v. M/V Ocean Lynx*, 901 F.2d 934, 937, 941 (11th Cir.

---

[6] Other Courts have recognized that bailment gives rise to a special relationship that will support a claim for indemnity. See *Penn Central Corp v. Checker Cab Co.* 488 FSupp 1225 (EDMI 1980; See also, *Armco International Crp. v. Rederi A/S Disa and Motorship*, 52 F.Supp. 668 (EDNY 1943) (an ocean carrier sued for cargo damage may implead the stevedore and deliverying railroad).

1990). Seeing no reason to depart from these decisions, and given the parties' agreement on this question, we conclude that the NVOCC/VOCC relationship may give rise to a claim for maritime tort indemnity to the extent articulated in this opinion.

Thus, K+N's Third-Party Complaint definitively complies with the *Iqbal* and *Twombly* standards.

### E.  Venue is Appropriate in the Instant Forum.

Recognizing, as it must, that a Sky Reefer provision would definitively provide for the instant forum as an appropriate venue, BNSF (and AZ West by way of adoption) baldly asserts without any factual or evidentiary support that the instant cause of action "[t]he K+N Claims do not arise from the Sea Waybill". (*See* [DE 49-1] Page 15). To the contrary, the services provided by both AZ West and BNSF most certainly arise from the Sea Waybill to which they were parties. Nevertheless, Movant's moving papers said the Third-Party Defendants pick and choose when they do or do not wish to rely upon the terms and conditions of the subject bill of lading. In fact, in the very paragraph above the statement where BNSF claims that this transportation of cargo does not stem from the Sea Waybill, BNSF asserts, "the claim asserted by Plaintiffs against K+N *is* based upon the Sea Waybill" (Emphasis added)., DE 49-1 page 15). Further, the parties specifically and expressly rely upon the very same Sea Waybill and its terms and conditions in its attempt to defeat the 14(c) claim.

Therein, and as more fully addressed above, Movants admit they are subcontractors which provided transportation of cargo under the Sea Waybill. It should be noted that, independent of the venue and jurisdictional Sky Reefer provision, the venue would be appropriate under 1391 in any event since K+N, a Defendant, is incorporated in the instant forum (*See* 1391(b)(2),(3); and (c)).[7]

---

[7] Assuming venue were improper, transfer to an appropriate district would be the appropriate remedy, not dismissal.

### III.    <u>Conclusion</u>

Despite Movants' best efforts to obfuscate the issues at hand, this is a simple and straightforward case where the cargo was not in the hands of K+N at the time of the loss; any liability which K+N might have to Plaintiff would be derivative in nature stemming from the actions or inactions of the Third-Party Defendants who were subcontractors under the subject bill of lading. Paragraph 1 defines such subcontractors, including road, rail, and air transport operators, forwarding agents, warehouseman, customs inspection stations, or any servants or agents employed in the performance of the Carriage and any direct or indirect subcontractors whether in direct contractual privity with Carrier or not. Both AZ West and BNSF fall within this definition, and in fact, in order to seek to defeat K+N's 14(c) claim, both Movants have judicially admitted this fact.

Next, Paragraph 5.3 expressly states that the subcontractors are bound by and entitled to assert the subject forum selection clause; that by virtue of the subcontractors' retention to effectuate the logistics requirements under the bill of lading, that the carrier contracts, not only on its own behalf, but on behalf of the subcontractors who are deemed to be parties to this contract.

To argue that there is no contractual relationship, no duty owed in tort, and no special relationship giving rise to a common law or maritime indemnity claim (without any legal support), runs in direct contravention to this definition which expressly highlights that there need be no direct privity.

The services performed by Third-Party Defendants were not only closely related to the bill of lading; they were parties to the bill of lading and performed their services as subcontractors thereunder. The forum selection clause grants jurisdiction and venue over the instant third-party claims and is enforceable against Movants. It is respectfully submitted that AZ West and BNSF's motions be denied in their entirety.

Dated: January 11, 2018               Respectfully submitted,

**SPECTOR RUBIN, P.A.**

By:    */s/ Andrew R. Spector*
        Andrew Spector (NY BAR NO. 3887)
        3250 Mary Street, Suite 405
        Miami, Florida 33133
        Tel: (305) 537-2000
        andrew.spector@spectorrubin.com
        *Attorneys for Defendant,*
        *Kuehne + Nagel, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 11, 2018, a true and correct copy of the foregoing document was electronically filed via the Court's CM/ECF system, which shall notify all parties of record.

By:    */s/ Andrew R. Spector*
        Andrew Spector (NY BAR NO. 3887)