UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
AFFILIATED FM INSURANCE
COMPANY, et al.,
                             Plaintiffs,

                -v-

KUEHNE + NAGEL, INC., et al.,
                             Defendants.

                -and-

KUEHNE NAGEL, INC.,
           Third-Party Plaintiff,

                -v-

BNSF RAILWAY COMPANY, et al.,
           Third-Party Defendants.
———————————————————————

17-CV-336 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

     In November 2015, a container of audio equipment left Tokyo, Japan, bound for Memphis, Tennessee. The container crossed the ocean and arrived in Los Angeles, California without incident. But the equipment suffered damage during its transcontinental journey, when the train carrying the container derailed in southwestern Missouri. The cargo owners and their insurer sued the shipper, and the shipper then sued the subcontractors responsible for the container's overland transportation.

     The subcontractors move to dismiss the Amended Third-Party Complaint (the "Complaint") for, among other reasons, lack of personal jurisdiction. For the reasons that follow, the motion is granted.

1

I.      Background

The following facts are taken from the Complaint and are assumed true for purposes of this motion.

As is common in intermodal, intercontinental shipping, this case involves a series of contracts and subcontracts. The foundational document is Sea Waybill number BANQTY02217950 (the "Sea Waybill"), issued by Kuehne + Nagel, Inc. ("K+N") to American Music and Sound, LLC for the transportation of a container of audio equipment from Tokyo, Japan to Memphis, Tennessee, via the Port of Los Angeles, California. (Dkt. No. 46 ("Compl.") ¶ 17; Dkt. No. 49-2 at 7.) After issuing this bill of lading, K+N then subcontracted AZ/CFS West, Inc. ("AZ") to provide "transportation logistics services" for the overland leg of the ship's journey. (Compl. ¶¶ 11, 24.) AZ, in turn, arranged for rail transportation by BNSF Railway Company ("BNSF"). (Compl. ¶¶ 4, 24.)

The cargo container departed Tokyo aboard the vessel Mol Experience in November 2015. (Compl. ¶ 17; Dkt. No. 49-2 at 7.) After safely arriving in Los Angeles, the container was transferred to a train bound for Memphis. (Compl. ¶¶ 17–18, 22.) But the train encountered flooding along Shoal Creek in Newton County, Missouri, causing the train to derail. (Compl. ¶ 22.) American Music and Sound, LLC and its insurer Affiliated FM Insurance Company (collectively, "Plaintiffs") allege that the audio equipment suffered both water and crushing damage as a result. (Compl. ¶ 17.)

Invoking federal maritime jurisdiction, Plaintiffs filed suit against K+N and the Mol Experience in January 2017 (Dkt. No. 1), and K+N, in turn, filed a third-party complaint against AZ and BNSF (collectively, "Third-Party Defendants"). (Dkt. No. 26.) K+N asserts claims for breach of contract, negligence, and indemnification against Third-Party Defendants. (Compl. ¶¶ 28−40.) K+N also has made a tender pursuant to Federal Rule of Civil Procedure 14(c),

alleging that Third-Party Defendants are liable to K+N for some or all of its liability to Plaintiffs or, alternatively, that they are liable to Plaintiffs directly. (Compl. ¶¶ 41−42.) Third-Party Defendants move to dismiss on a variety of grounds, including for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## II.     Legal Standard

"[T]he plaintiff bears the burden of establishing personal jurisdiction over the defendant." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)). "Where, as here, a district court in adjudicating a [Rule 12(b)(2)] motion . . . 'relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction.'" *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)).

In evaluating a Rule 12(b)(2) motion, a court must "construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Porina*, 521 F.3d at 126. "Nevertheless, [the plaintiff] must make allegations establishing jurisdiction with some 'factual specificity' and cannot establish jurisdiction through conclusory assertions alone." *Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*, 586 F. App'x 768, 769 (2d Cir. 2014) (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)).

"Personal jurisdiction of a federal court over a non-resident defendant is governed by the law of the state in which the court sits—subject, of course, to certain constitutional limitations of due process." *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998) (quoting *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994)). "In assessing whether personal jurisdiction is authorized, 'the court must look first to the long-arm statute of the forum state, in

this instance New York.'" *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (quoting *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997)). "If, but only if, [the] answer is in the affirmative, [the court] must then determine whether asserting jurisdiction under that provision would be compatible with requirements of due process established under the Fourteenth Amendment to the United States Constitution." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007).

## III. Discussion

K+N posits two separate grounds for finding personal jurisdiction over Third-Party Defendants: (1) a forum selection clause in the Sea Waybill, and (2) statutory authority. The Court addresses each in turn.

### A. The Sea Waybill's Forum Selection Clause

#### 1. The Terms of the Sea Waybill

K+N's first argument in favor of personal jurisdiction hinges on a contractual document called a "sea waybill."[1] A sea waybill, which is a type of "bill of lading,"[2] fulfills three primary functions: It "records that a carrier has received goods from the party that wishes to ship them,

---

[1] BNSF filed the Sea Waybill as an attachment to its motion to dismiss. (*See* Dkt. No. 49-2.) In *Dorchester Financial Securities, Inc. v. Banco BRJ, S.A.*, the Second Circuit held that when the district court declines to hold an evidentiary hearing on a Rule 12(b)(2) motion, it is error to consider evidence submitted by the defendant to rebut the plaintiff's prima facie showing of personal jurisdiction. 722 F.3d 81, 86 (2d Cir. 2013). This case is distinguishable, however, because K+N, the third-party plaintiff, relies on the Sea Waybill to establish personal jurisdiction. Therefore, the Court concludes it is appropriate to consider the Sea Waybill as a "document[] upon which the complaint relies and which [is] integral to the complaint." *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005); *see also Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 176 n.7 (E.D.N.Y. 2015).

[2] Technically, a waybill and a bill of lading are slightly different creatures. *See Royal & Sun All. Ins., PLC v. Ocean World Lines, Inc.*, 612 F.3d 138, 141 n.5 (2d Cir. 2010) ("A sea waybill is like a bill of lading, except that bills of lading are negotiable, while waybills are not."). For purposes of this motion, however, they can be treated as the same.

4

states the terms of carriage, and serves as evidence of the contract for carriage." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18–19 (2004). Many waybills, including the one at issue in this case, are "through bills" that "cover[] both the ocean and inland portions of the transport in a single document." *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 94 (2010).

Even though it contemplates some overland transportation, the Sea Waybill is a maritime contract, and federal law governs its interpretation. *See Kirby*, 543 U.S. at 22−24 (holding that a contract is a maritime contract when its "primary objective is to accomplish the transportation of goods by sea . . . to the United States," even when it "call[s] for some performance on land"). Under the federal rule, "contracts for carriage of goods by sea must be construed like any other contracts: by their terms and consistent with the intent of the parties." *Id.* at 31.

The Sea Waybill contains two clauses that are relevant to K+N's assertion of personal jurisdiction. The first is a forum selection clause giving this Court exclusive jurisdiction over disputes arising under the Sea Waybill. Paragraph 21.1 states:

> For US Carriage, this sea waybill is governed by United States law and the United States Federal Court of the Southern District of New York has exclusive jurisdiction to hear all disputes hereunder.

(Dkt. No. 49-3 ¶ 21.1.) The second is a so-called Himalaya Clause, a type of contractual provision commonly used by shippers to "extend[] contractual protections that would otherwise apply only to the entity issuing the bill of lading to the subcontractors of the issuing entity as well." *Royal & Sun All. Ins., PLC v. Ocean World Lines, Inc.*, 612 F.3d 138, 142 (2d Cir. 2010). The relevant portion of the Sea Waybill's Himalaya Clause states:

> Without prejudice to the other provisions in this Clause . . . , every Sub-Contractor shall have the benefit of all provisions herein benefiting the Carrier including clause 21 . . . , the jurisdiction and law clause, as if this sea waybill . . . were expressly for its benefit[,] and in entering into this contract the Carrier, to the extent of these provisions, does so not only on his own behalf but also as agent or

5

> trustee for such Sub-Contractor and such Sub-Contractor shall to this extent be or be deemed to be parties to this contract.

(Dkt. No. 49-3 ¶ 5.3.)

The Sea Waybill defines "Sub-Contractors" to include "any independent contractors, servants or agents employed by the Carrier . . . and any direct or indirect sub-contractors, servants, or agents thereof, whether in direct contractual privity with the Carrier or not." (Dkt. No. 49-3 ¶ 1.) Although AZ and BNSF fall within the Sea Waybill's definition of "Sub-Contractors," they are not identified by name; indeed, neither AZ nor BNSF appears anywhere on the Sea Waybill.

### 2. The Enforceability of the Sea Waybill's Forum Selection Clause

K+N argues that the Sea Waybill's forum selection clause binds Third-Party Defendants and that, as a result, AZ and BNSF have consented to personal jurisdiction in the Southern District of New York. (Dkt. No. 57 at 8.) The latter half of this proposition is true: If AZ and BNSF are indeed parties to the forum selection clause, then they have waived any objection to personal jurisdiction. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."); *see also Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co., LLC*, No. 11 Civ. 6804, 2012 WL 527209, at *2 (S.D.N.Y. Feb. 17, 2012) ("When a forum selection clause is found valid and enforceable, 'it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process.'" (quoting *Export–Import Bank of the U.S. v. Hi–Films S.A. de C. V.*, No. 09 Civ. 3573, 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010))).

The important question, therefore, is whether the forum selection clause is enforceable against AZ and BNSF. In *M/S Bremen v. Zapata Off-Shore Co.*, the Supreme Court held that a

maritime contract's forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." 407 U.S. 1, 10 (1972). Following the *M/S Bremen* decision, the Second Circuit announced a four-part test for determining the validity of a forum selection clause. Initially, a court asks (1) "whether the clause was reasonably communicated to the party resisting enforcement," (2) whether "the clause [is] mandatory or permissive," and (3) "whether the claims and parties involved in the suit are subject to the forum selection clause." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). If these three requirements are met, the clause is "presumptively enforceable." *Id.* at 383. Then "[t]he fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* at 383−84 (quoting *M/S Bremen*, 407 U.S. at 15).

The Court focuses its attention on the third prong: whether the Sea Waybill's forum selection clause covers the "claims and parties" at issue in K+N's Complaint. The Court assumes, for the moment, that the *terms* of the Sea Waybill would subject Third-Party Defendants to personal jurisdiction in this district.[3] Thus the question is whether AZ and

---

[3] Third-Party Defendants' briefing does not question K+N's presumption that a subcontractor bound by the terms of the Sea Waybill would be required to litigate in the Southern District of New York. The Court, however, expresses some skepticism. First, the Sea Waybill indicates that "every Sub-Contractor shall have the *benefit* of . . . the jurisdiction and law clause." (Dkt. No. 49-3 ¶ 5.3 (emphasis added).) But K+N seeks to use the forum selection clause to its subcontractors' *detriment*. *See, e.g.*, *Mar. Ins. Co. v. M/V "Sea Harmony"*, No. 97 Civ. 3818, 1998 WL 214777, at *2 (S.D.N.Y. May 1, 1998). Second, it is not clear that K+N's claim against its subcontractors—which are not parties to the Sea Waybill—qualifies as a dispute arising "under" the waybill, as required by the forum selection clause. (Dkt. No. 49-3 ¶ 21.1.) *See, e.g.*, *Allianz Glob. Corp. & Specialty*, 2014 WL 4674644, at *5.

7

BNSF—which are not signatories to the Sea Waybill—are nevertheless bound by its terms. K+N offers two legal theories to support such a conclusion.

### i. "Closely Related" Test

K+N first relies on the "closely related" test. Recently adopted by the Second Circuit in *Magi XXI, Inc. v. Stato della Citta del Vaticano*, the "closely related" test allows "a non-signatory to a contract containing a forum selection clause [to] enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory." 714 F.3d 714, 723 (2d Cir. 2013).[4] To be "closely related," "the relationship between the non-signatory and that (latter) signatory must be sufficiently close that the non-signatory's enforcement of the forum selection clause is 'foreseeable' to the signatory against whom the non-signatory wishes to enforce the forum selection clause." *Id.*

Some examples will help to clarify the issue. Imagine three parties, Principal A, Contractor B, and Subcontractor C. Principal A and Contractor B have signed Contract X, which obligates Contractor B to perform services for Principal A. Contractor B then subcontracts with Subcontractor C to perform some of those services. Consider three scenarios under which Subcontractor C—a non-signatory to the contract—may become implicated in a suit to enforce Contract X: (1) Subcontractor C seeks to enforce a provision of Contract X against Principal A; (2) Principal A seeks to enforce a provision of Contract X against Subcontractor C; or (3) Contractor B seeks to enforce a provision of Contract X against Subcontractor C.

---

[4] The "closely related" test does not, however, "apply to the question of whether a non-signatory is bound by a mandatory arbitration clause.'" *Magi XXI, Inc.*, 714 F.3d at 723 n.9. Therefore, to the extent the parties here rely on cases addressing mandatory arbitration clauses, those cases are inapposite.

8

Scenario One is the case presented by *Magi XXI*. There, the Second Circuit held that Subcontractor C may enforce a forum selection clause against Principal A if Subcontractor C is "closely related" to Contractor B such that Subcontractor C's enforcement of the clause is "foreseeable" to Principal A. However, as other courts have observed, "'the phrase 'closely related' is not particularly illuminating,' and . . . courts have varied in their application of the doctrine." *Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*, 875 F. Supp. 2d 297, 307 (S.D.N.Y. 2012) (footnote omitted) (quoting *In re Lloyd's Am. Trust Fund Litig.*, 954 F. Supp. 656, 669 (S.D.N.Y. 1997)). Generally speaking, courts have found parties to be so "closely related" that enforcement of a forum selection clause is "foreseeable" in two kinds of situations: "where the non-signatory had an active role in the transaction between the signatories or where the non-signatory had an active role in the company that was the signatory." *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 325 (S.D.N.Y. 2017); *see also Bent v. Zounds Hearing Franchising, LLC*, No. 15 Civ. 6555, 2016 WL 153092, at *4 (S.D.N.Y. Jan. 12, 2016) (collecting cases). Non-signatory alter-egos, corporate executive officers, and successors-in-interest have all, at least in some instances, satisfied the "closely related" test. *See Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 524–25 (S.D.N.Y. 2018) (collecting cases).

Scenario Two, in which Principal A seeks to enforce a contract provision against Subcontractor C, presents a closer question. Although the *Magi XXI* court held that (non-signatory) Subcontractor C may enforce a forum selection clause against (signatory) Principal A, it did "not reach the question of when a signatory may enforce a forum selection clause against a non-signatory." *Magi XXI, Inc.*, 714 F.3d at 723 n.10. The court did, however, reiterate its prior holding in *Aguas Lenders Recovery Grp., LLC v. Suez, S.A.* that "the fact a party is a non-

signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." 585 F.3d 696, 701 (2d Cir. 2009); *see also Magi XXI, Inc.*, 714 F.3d at 722 (quoting *Aguas Lenders*, 585 F.3d at 701). Taking their cue from *Aguas Lenders* and *Magi XXI*, several district courts in this circuit have extended the "closely related" test to Scenario Two cases as well. *See, e.g.*, *Prospect Funding Holdings, LLC*, 256 F. Supp. 3d at 323–24 (collecting cases); *Philippe NYC I LLC v. Philippe W. Coast, LLC*, No. 14 Civ. 9858, 2016 WL 1183669, at *8 (S.D.N.Y. Mar. 24, 2016) (same).

K+N relies on the foregoing case law to argue that Third-Party Defendants are so closely related to the dispute that enforcement of the Sea Waybill's forum selection clause is foreseeable. (*See* Dkt. No. 6−13.) But this case is a Scenario Three case. K+N (Contractor B) is seeking to enforce a provision of its contract with Plaintiffs (Principal A) against its own subcontractors (Subcontractor C).[5] In glossing over this crucial difference, K+N presumes what no court in the Second Circuit has yet held: the applicability of the "closely related" test to a dispute between a signatory contractor and its non-signatory subcontractor.[6]

This Court declines to extend the "closely related" test to a Scenario Three case for a simple reason: It is unnecessary. The purpose of the "closely related" test is to facilitate shipping transactions by creating certainty. It gives parties who have come to an agreement the

---

[5] For ease of analysis, the Court treats BNSF as a subcontractor of K+N. The Court notes, however, that in actuality BNSF is a subcontractor of a subcontractor, and it is not in contractual privity with K+N.

[6] The Court notes one case containing contrary dicta. In *Atlantic Container Line AB v. Volvo Car Corp.*, No. 14 Civ. 1811, the court stated that because a non-signatory "was an intended beneficiary of the Waybills' broadly written Himalaya clause," it was "entitled—*indeed, required*—to sue in this district per the forum selection clause." 2014 WL 4730152, at *4 (S.D.N.Y. Sept. 22, 2014) (emphasis added). This Court declines to give weight to *Atlantic Container*'s two stray words. Indeed, elsewhere in its opinion, the court stated that the very same non-signatory "cannot be bound by [the] terms" of a transportation agreement "[b]ecause [it] is a stranger to" that agreement." *Id.* at *7.

ability to enforce that agreement against the universe of entities who should expect as much—successors-in-interest, executive officers, and the like—without being overly persnickety about who signed on the dotted line. The desire to protect negotiated-for expectations is what led the Second Circuit to caution that "[a] literal approach to interpreting forum selection clauses—an approach that always ignored affiliates of the signatories—could . . . undermine the contribution that such clauses have been praised for making to certainty in commercial transactions." *Magi XXI, Inc.*, 714 F.3d at 722 (second alteration in original) (quoting *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 441 (7th Cir. 2012)). In other words, when parties negotiate ex ante to litigate in a particular forum, their agreement should not be easily scuttled ex post by a technicality.

But the situation is very different when contractors and their subcontractors are involved. Unlike Principal A and Subcontractor C, who are legal strangers to each other, Contractor B and Subcontractor C have a preexisting contractual relationship. This means that Contractor B and Subcontractor C had the opportunity to negotiate and agree to a forum selection clause, but, for whatever reason, they declined to do so. If the purpose of a foreseeability test is to enforce parties' reasonable expectations, then such a test is wholly unnecessary when the parties actually memorialized their expectations in a contract. *Cf. Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 821–22 (2d Cir. 2006) (holding, in a case in which a carrier attempted to enforce the forum selection clause in its *subcontract* against its counterpart on the *main* contract, that "[a] carrier which enters into a contract of charter cannot unilaterally alter the terms of its contract by the simple expedient of issuing its bills of lading containing inconsistent terms upon its receipt of the cargo."). Requiring Third-Party Defendants to honor a contractual provision that K+N

11

negotiated with Plaintiffs would, in effect, give K+N the windfall of a favorable forum selection clause for which it did not pay. This the Court will not do.

### ii. Third-Party Beneficiary Status

Alternatively, K+N argues that because AZ and BNSF are third-party beneficiaries of the Sea Waybill's Himalaya Clause, they should be bound by the waybill's forum selection clause as well.

K+N is only half right. As a general matter, non-parties to a contract may sue under that contract if they are its intended beneficiaries. But a third-party beneficiary's access to contractual benefits is not necessarily contingent on its acceptance of contractual burdens. And this basic principle is no less true in the context of bills of lading: "While the carrier and the shipper can extend certain contractual protections, such as the limitation on damages, to . . . third-party beneficiaries, they cannot contract to bind an unconsenting third party." *Stein Hall & Co. v. S. S. Concordia Viking*, 494 F.2d 287, 291 (2d Cir. 1974) (citation omitted). "[Q]ualifying as an intended beneficiary [of a bill of lading] in no way *creates* contractual obligations on the part of the intended beneficiary." *In re M/V Rickmers Genoa Litig.*, 622 F. Supp. 2d 56, 72 (S.D.N.Y. 2009), *aff'd sub nom. Chem One, Ltd. v. M/V RICKMERS GENOA*, 502 F. App'x 66 (2d Cir. 2012).

Instead, to bind Third-Party Defendants to the forum selection clause by virtue of their status as intended beneficiaries, K+N would need to show either "that [they] exhibited acceptance to be so bound" or that they consented "through an agency relationship with one of the contracting parties." *In re M/V Rickmers Genoa Litig.*, 622 F. Supp. 2d at 72. Neither condition exists in this case.

First, Third-Party Defendants have in no way agreed to be bound by the provisions of the Sea Waybill. True, AZ and BNSF seek the protection of the Sea Waybill's Himalaya Clause, and in so arguing they admit to qualifying as "Sub-contractors" under its terms. But K+N's attempt to wring a "judicial admission" out of Third-Party Defendants' reliance on the Himalaya Clause is unavailing. (*See* Dkt. No. 57 at 2−6.) As discussed above, AZ and BNSF can benefit from the protection of the Himalaya Clause without agreeing to be bound by the burden of the Sea Waybill's forum selection clause. *See Mar. Ins. Co.*, 1998 WL 214777, at *2 ("[E]ven if [a non-signatory subcontractor] were a third-party beneficiary of the entire bill of lading, that would not give plaintiff and co-defendants the ability to extend a *liability* to [the subcontractor] by enforcing the forum selection clause *against* [it].").

Second, AZ and BNSF never entered into an agency relationship that would have given K+N the authority to accept the terms of the Sea Waybill on their behalf. The Himalaya Clause does state that "in entering into this contract the Carrier . . . does so not only on its own behalf but also as agent or trustee for such Sub-Contractor." (*See* Dkt. No. 49-3 ¶ 5.3.) But K+N's reliance on this clause collapses under its own weight. In effect, K+N claims that a contract to which AZ and BNSF are not parties created an agency relationship between AZ and BNSF, on the one hand, and K+N on the other. Further straining credulity, K+N appears to argue that in this same document, it somehow inked a contract between itself as contractor and itself as agent, thereby binding AZ and BNSF to K+N's choice of forum. No principle of agency law allows such agency-by-fiat.[7]

---

[7] The holding of *Kirby*, of course, recognizes an agency relationship running in the *opposite* direction: between a shipper and the cargo owner for the benefit of a subcontractor. *See Kirby*, 543 U.S. at 34 (holding that an intermediary shipper acts as a cargo owner's agent "for [the] *single, limited* purpose" of "bind[ing] a cargo owner to the liability limitations [the intermediary] negotiates with downstream carriers).

Consequently, the Court concludes that "the claims and parties involved in [this] suit" are not subject to the forum selection clause. *Phillips*, 494 F.3d at 383. Because the forum selection clause is therefore unenforceable against Third-Party Defendants, K+N cannot rely on the Sea Waybill to establish personal jurisdiction for purposes of its claims against AZ and BNSF.[8]

B. **General and Specific Personal Jurisdiction**

In the absence of a waiver of personal jurisdiction by contract, the Court must determine whether New York law authorizes the assertion of either general or specific personal jurisdiction over Third-Party Defendants. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). "General jurisdiction renders a defendant amenable to suit on all claims," while "[s]pecific jurisdiction renders a defendant amenable to suit only on those claims that arise from conduct related to the forum." *Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*, No. 14 Civ. 1568, 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015). K+N argues that Third-Party Defendants are subject to both types of personal jurisdiction.

---

[8] Although not briefed by the parties, the Court notes that K+N's Rule 14(c) tender presents a slightly knottier question. Rule 14(c)(2) allows a defendant, proceeding as a third-party plaintiff to "demand judgment in the plaintiff's favor against the third-party defendant," and, in that circumstance, "the action proceeds as if the plaintiff had sued . . . the third-party defendant" directly. Fed R. Civ. P. 14(c). So, although Rule 14(c) does not "eliminate the need for establishing an independent basis of personal jurisdiction over impleaded defendants," *Rout v. Mobil Oil Corp.*, No. 82 Civ. 7602, 1985 WL 2151, at *1 (S.D.N.Y. July 26, 1985), *aff'd*, 800 F.2d 1128 (2d Cir. 1986), the question is whether the Court could exercise personal jurisdiction over a hypothetical claim by *Plaintiffs* against Third-Party Defendants. Such a hypothetical action poses a Scenario Two case—and one in which application of the "closely related" test is more appropriate. Even so, in the absence of any contrary argument by K+N, the Court concludes that K+N and Third-Party Defendants are not so closely related that Plaintiffs' enforcement of the forum selection clause against AZ and BNSF would have been foreseeable to those parties. Third-Party Defendants neither "played an active role in the transaction" creating the Sea Waybill, nor did they serve as "principal[s] of the signatory company." *Bent*, 2016 WL 153092, at *4. Consequently, K+N cannot rely on the forum selection clause to establish personal jurisdiction for purposes of its Rule 14(c) tender.

1. **General Jurisdiction**

General jurisdiction exists only where a "corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Daimler AG*, 571 U.S. at 139 (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "[E]xcept in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business . . . ." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016).

AZ and BNSF are not subject to general jurisdiction in New York. The Complaint alleges that BNSF is a Delaware corporation with its principal place of business in Texas, and AZ is a California corporation that offers transportation services "coast to coast." (Compl. ¶¶ 3, 5, 10, 13.) Thus, neither Third-Party Defendant maintains its place of incorporation or principal place of business in New York. (Compl. ¶¶ 5−6, 13−14.) Indeed, beyond the mere fact that both AZ and BNSF provide intercontinental transportation services, the Complaint is devoid of any allegation whatsoever placing Third-Party Defendants in New York, either physically or legally. General jurisdiction, therefore, does not exist.

2. **Specific Jurisdiction Under CPLR § 302(a)(3)(ii)**

Section 302(a) of New York's Civil Practice Law and Rules ("CPLR") enumerates the various types of actions that can give rise to specific jurisdiction in New York. Most of § 302(a)'s bases for personal jurisdiction are irrelevant to this case: The Complaint does not allege that Third-Party Defendants transacted any business within New York, contracted to supply goods in New York, or committed tortious acts inside New York. *See* N.Y. C.P.L.R. § 302(a). Indeed, of all the various countries and states that the damaged cargo passed through *en route* from Tokyo to Memphis, none of those places includes the state of New York.

K+N alleges, however, that personal jurisdiction is proper because Third-Party Defendants' conduct *outside* the state caused injury *within* the state. K+N relies on § 302(a)(3)(ii), which states:

> [A] court may exercise personal jurisdiction over any non-domiciliary . . . who . . . commits a tortious act without the state causing injury to person or property within the state, . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

N.Y. C.P.L.R. § 302(a).

With respect to K+N's contract claims, specific personal jurisdiction is foreclosed by the language of § 302(a)(3), which covers only "tortious acts." "New York courts routinely hold that a breach of contract claim does not constitute a tortious act and may not form the basis of long-arm jurisdiction pursuant to section 302(a)(3)." *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 332 (S.D.N.Y. 2015). Consequently, K+N cannot invoke § 302(a)(3) for purposes of its breach-of-contract claim or its indemnity claim (to the extent that claim rests on a breach-of-contract theory).

With respect to K+N's tort claims, the existence of personal jurisdiction hinges on the meaning of "injury within" New York. Section 302(a)(3) covers only injuries that are "direct and not remote or consequential," *Lehigh Val. Indus., Inc. v. Birenbaum*, 527 F.2d 87, 94 (2d Cir. 1975), and "the suffering of economic damages in New York is insufficient, alone, to establish a 'direct' injury in New York for . . . § 302(a)(3) purposes," *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 38 (2d Cir. 2010).

K+N argues that Third-Party Defendants' tortious conduct caused K+N to suffer economic harm in the state of New York because (1) K+N is a New York corporation (albeit with its principal place of business in New Jersey), and (2) K+N must defend against Plaintiffs'

suit in the Southern District of New York. (Compl. ¶¶ 2, 8, 15.) Both theories of in-state injury are unavailing.

First, K+N's incorporation in New York is insufficient to establish injury in New York.[9] As the New York Court of Appeals explained in *Fantis Foods, Inc. v. Standard Importing Co.*, "It has . . . long been held that the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there." 49 N.Y.2d 317, 326 (1980); *see also Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302–04 (2011) (collecting cases). For this reason, "remote injuries located in New York solely because of domicile or incorporation here do not satisfy" § 302(a)(3). *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 205 (1978).

Admittedly, New York courts have qualified this standard in the context of harms arising from intangible torts, such as theft of trade secrets or infringement copyrights. *See Sybron Corp.*, 46 N.Y.2d at 205−06; *Penguin Grp. (USA) Inc.*, 16 N.Y.3d at 303−07. But in so holding, these courts have continued to affirm the principle of *Fantis* "that a derivative economic injury felt in New York based solely on the domicile of the plaintiff is insufficient to establish an in-state injury." *Penguin Grp. (USA) Inc.*, 16 N.Y.3d at 302. Instead, New York courts have

---

[9] K+N's brief relies primarily on precedent applying New York's borrowing statute, CPLR § 202, which requires a court to determine where a cause of action "accrue[s]." *See* N.Y. C.P.L.R. § 202. However, determining the location of an injury for purposes of § 202 requires application of "a different standard" than the one for determining "the situs of injury for purposes of long-arm jurisdiction," because in a § 302(a)(3) inquiry, "the focus is on the tortious activity of the defendant and not the economic impact to the plaintiff." *Karoon v. Credit Suisse Grp. AG*, No. 15 Civ. 4643, 2016 WL 815278, at *5 (S.D.N.Y. Feb. 29, 2016) (quoting *Gordon Grp. Inv., LLC v. Kugler*, No. 6507952009, 2012 WL 10007029, at *12 (N.Y. Sup. July 27, 2012)).

recognized that in the context of torts causing direct harm to intangible commercial assets, such as intellectual property, a New York company "suffers something more than . . . indirect financial loss" in New York. *Id.* at 305. In contrast, this case involves a quintessential "tort[] causing physical harm"—a train-wreck—for which the plaintiff's state of incorporation is insufficient to establish injury "within" the state. *Id.* at 303 (quoting *Sybron Corp.*, 46 N.Y.2d at 205).

Second, the fact that K+N must litigate in New York and may face an adverse judgment in New York does not constitute a "direct" injury in this state. K+N's theory of the case is that AZ and BNSF's tortious conduct caused injury to Plaintiffs in Missouri, which then caused Plaintiffs to sue K+N in New York. The connection is too tenuous. Third-Party Defendants may have catalyzed a chain reaction that eventually reached New York, but the New York-based effects of their conduct are too "remote or consequential" to constitute a direct injury under § 302(a)(3). *Lehigh Val. Indus., Inc.*, 527 F.2d at 94.

Indeed, were § 302(a)(3) to authorize jurisdiction under such a circumstance, the Court would proceed to ask whether exercising such jurisdiction comports with the Due Process Clause of the U.S. Constitution. *See Best Van Lines*, 490 F.3d at 242. The Due Process Clause requires that "minimum contacts" exist between the defendant and the forum state, and it protects a defendant from being "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945), then *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), then *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980), then *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,

417 (1984)).  Mindful that the New York "legislature did not inten[d] to extend the jurisdiction of the [state] courts to the outer reaches of constitutional power," this Court declines to interpret "'injury . . . within the state' . . . to press judicial jurisdiction to its fullest limits." *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 435 (2d Cir. 1971).

Consequently, the Court concludes that New York law does not provide a statutory basis for exercising personal jurisdiction over Third-Party Defendants.

### IV. Conclusion

For the foregoing reasons, Third-Party Defendants' motions to dismiss the Amended Third-Party Complaint for lack of personal jurisdiction are GRANTED.

The Clerk of Court is directed to close the motions at Docket Numbers 49 and 50.

The stay of discovery is hereby LIFTED. Within 14 days of the date of this order, the parties shall file a letter with the Court proposing a timeline for further proceedings.

SO ORDERED.

Dated: July 16, 2018
      New York, New York

_____
J. PAUL OETKEN
United States District Judge